GRADY WARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ward v. Commissioner
Docket No. 8905-76.
United States Tax Court
T.C. Memo 1978-216; 1978 Tax Ct. Memo LEXIS 302; 37 T.C.M. (CCH) 928; T.C.M. (RIA) 78216; June 8, 1978, Filed M. Ashley Dickerson, for the petitioner. Charles L. Eppright, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Pursuant to section 7456(c), Internal Revenue Code of 1954, and Rules 180 and 182, Tax Court Rules of Practice and Procedure, this case was *303 heard by Special Trial Judge Randolph F. Caldwell, Jr. His report was filed on February 23, 1978. Respondent filed exceptions to the report and the petitioner filed a response to respondent's exceptions. The Court agrees with and adopts with minor changes the report of the special trial judge as set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a) of the Internal Revenue Code of 1954, [1]/ for years and in amounts as follows: Years
Deficiencies
Additions to Tax
1973
$ 2,904.00
$ 145.00
1974
2,769.00
138.00
The issues presented for decision are: (1) What are the useful lives of two rental properties, certain paved parking areas, and carpeting installed in one of the rental properties; (2) What amount, if any, is petitioner entitled to deduct as expenses for snow removal during 1973 *304 and 1974; (3) Whether underpayments of tax for the taxable years 1973 and 1974 were due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts were stipulated. The stipulation is incorporated herein by reference. At the time the petition herein was filed, petitioner's legal residence was Anchorage, Alaska. Petitioner filed his Federal income tax return for the calendar years 1973 and 1974 with the Internal Revenue Service Center at Ogden, Utah. Petitioner has been a resident of Alaska since 1950. Before he moved to Alaska, petitioner lived in Portland, Oregon, for 10 years. While living in Portland he worked as an apprentice carpenter. Petitioner has worked as a journeyman carpenter ever since his move to Alaska. He attended vocational school but has never completed his high school education. In 1964, petitioner acquired a building which was located on the site of a future shopping center. The building was of frame construction with a stucco exterior and was approximately 10 years old at the time of purchase. Petitioner constructed a basement foundation on a lot that he owned *305 in the City of Anchorage. Petitioner then had the building moved to his lot and placed on the basement foundation. The building had been built in an area for which there was no building code and it did not comply with the building code of the City of Anchorage. In order to bring the building into compliance with the city code, petitioner had new electrical, plumbing and heating systems installed and rebuilt the roof. Petitioner also made modifications in the existing room arrangement in order to meet city code standards. Petitioner also installed siding on the exterior walls of the building. Petitioner began renting two apartments on the second floor of the building in late 1964 or early 1965. In mid-1965 petitioner began work on two apartment units in the basement of the building. These apartments were completed and rented in late 1965. (Hereinafter this building will be referred to as the "fourplex"). Petitioner's basis in the fourplex was $ 62,000. Petitioner bought a duplex located on East 11th Street in Anchorage, Alaska, from a Mrs. Cook in June or July of 1974 for $ 33,500. The duplex had been constructed in 1947. The duplex was a one-story frame building *306 with no attic and rested on a concrete foundation. The prior owner sold the duplex because she could not afford the cost of maintaining it. At the time of purchase the duplex was being used as a rental property. After petitioner acquired the duplex, petitioner made the following repairs and improvements to it during 1974: he repaired the baseboard heater, removed the old carpeting and installed new carpeting; painted the interior and exterior of the house; installed siding upon the exterior walls; and repaired the electrical and plumbing systems. In order to bring the building up to the city code petitioner added a utility room to the building in 1974. Petitioner's basis in the utility room was $ 2,297.85. Petitioner carefully maintains the fourplex and the duplex. He does most of the maintenance and repair work on the buildings himself. Occasionally petitioner will hire a plumber or electrician to work on the buildings. Petitioner uses a 1964 Chevrolet half ton pick-up truck in his maintenance of the buildings. In 1974, petitioner had the parking area in front of the duplex and the parking area in the rear of the fourplex paved. The two parking areas were paved at different *307 times after May 1, 1974. The total cost of the paving was $ 1,000. The parking area at the rear of the fourplex had been paved in 1969, but the paving had deteriorated to such an extent that a repaving was necessary. The parking area in front of the duplex is approximately thirty feet wide and twenty feet deep. The parking area at the rear of the fourplex is between thirty and forty feet wide and is thirty-five feet deep. In 1974, petitioner purchased nylon carpeting from Montgomery Ward for use in the fourplex. The carpeting cost $ 743.41. Petitioner had snow removed from the parking areas for his buildings whenever there was an accumulation of four or more inches of snow. The City of Anchorage requires the removal of snow from parking areas. Snow removal at the fourplex cost $ 25.00 to $ 30.00 for each of the front [2]/ and rear parking areas. Snow removal at the duplex generally cost $ 15.00. The persons petitioner hired to remove the snow generally would only accept cash in payment for their services and would not give receipts. Petitioner did not maintain any record of the number of times he had snow removed from the parking areas in 1973 or 1974. *308 Petitioner did not keep a formal set of books and records during 1973 and 1974. He placed receipts in a box in the glove compartment of his pick-up truck and gave all the receipts which he had kept to his tax preparer. Petitioner did not maintain a checking account. Petitioner's only charge account during 1973 and 1974 was at J.C. Penney. On his 1973 return petitioner reported gross rental receipts of $ 7,620 and a net rental loss of $ 5,083.76. On his 1974 tax return petitioner reported gross rental receipts of $ 11,105 and a net rental loss of $ 414.21. Petitioner claimed the expenses listed in column (a) of the table set out below on his Federal income taxes for 1973 and 1974. In the notice of deficiency dated July 29, 1976, respondent determined that the deductions in question were allowable in the amounts set forth in column (b). After a review of the receipts maintained by petitioner, counsel for respondent and for petitioner agreed that the deductions were allowable in the amounts listed in column (c). (c)
(a)
(b)
Allowable per
Claimed
Allowed in
agreement of Item
on return
Notice of Deficiency
counsel
1973
Gasoline tax
$ 516.00
$ 97.00
$ 97.00
Real estate tax
1,803.33
1,696.00
1,696.00
Insurance
964.00
263.00
321.00
Utilities
1,403.31
862.00
1,136.53
Maintenance *
2,505.69
0
391.95
Labor *
2,000.00
0
0
Truck maintenance
and gasoline
1,200.00
0
476.65
$ 10,392.33
$ 2,918.00
$ 4,119.13
1974
Gasoline tax
$ 516.00
$ 85.00
$ 85.00
Insurance
1,155.00
513.00
599.00
Truck maintenance
and gasoline
980.11
0
709.08
Utilities
2,382.69
1,453.00
1,453.00
Carpeting *
743.41
0
0
$ 5,777.21
$ 2,051.00
$ 2,846.08
*309 Respondent totally disallowed claimed snow removal expenses of $ 300 for 1973 and $ 400 for 1974, due to a lack of substantiation. The parties agreed that petitioner was entitled to certain previously unclaimed expenses. These are: 1974
Rental maintenance
$ 250.62
Charitable contributions
$ 335.00
The parties agreed upon the following deductions for depreciation: 1973 Item
Basis
Useful Life
Deduction allowed
Utility room
$ 2,297.85
10 years
$ 229.79
Vacuum cleaner
79.78
2 years
39.89
Water heater
187.99
3 years
62.67
Metal storage shed
100.20
2 years
50.10
1974
Utility room
2,297.85
10 years
229.79
Vacuum cleaner
79.78
2 years
39.89
Water heater
187.99
3 years
62.67
Metal storage shed
100.20
2 years
50.10
The parties were not able to agree upon the useful life of certain depreciable assets. Petitioner's estimate of useful life is listed in column (a); respondent's determination of useful life is listed in column (b). Item
(a)
(b)
Fourplex
20
40
Duplex
10
20
Paving
5
20
Carpet
3
5
*310 OPINION I. Useful lives of Depreciable Properties
Section 167 states: (a) General Rule - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear, (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for production of income. The allowance for depreciation authorized by section 167 is that amount which should be set aside each year in accordance with a reasonably consistent plan so that the total of the allowances set aside, plus salvage value, will at the end of the estimated useful life of the property equal the cost or other basis of the property. Sec. 1.167(a)-1(a), Income Tax Regs.
The useful life of an asset is that period for which the asset may reasonably be expected to be employed in the taxpayer's business. Massey Motors, Inc. v. United States,364 U.S. 92, 107 (1960); Sec. 1.167(a)-1(b), Income Tax Regs.The regulations (sec. 1.167(a)-1(b)) implementing section 167 state: This period [useful life] shall be determined by reference to his [the taxpayer's] experience with similar property taking into account *311 present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Salvage value is not a factor for the purpose of determining useful life. If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. * * * Thus, the useful life of depreciable property is a question of fact, a matter of judgment and estimation, that must be determined from the facts of the case. Merchants Nat. Bank of Topeka v. Commissioner,554 F.2d 412 (10th Cir. 1977); Casey v. Commissioner,38 T.C. 357, 381 (1962); *312 Rev. Proc. 62-21, 1962-2 C.B. 418, 429. However, when the Commissioner has adjusted the useful life chosen for a depreciable asset by a taxpayer, the Commissioner's determination is presumptively correct and the burden is on the taxpayer to establish error in that determination. Merchants Nat. Bank of Topeka v. Commissioner,supra at 415; Richardson v. United States,330 F. Supp. 102, 109 (S.D. Tex. 1971); Dielectric Materials Company v. Commissioner,57 T.C. 587, 592 (1972); Casey v. Commissioner,supra at 381. A. Rental Property.
Petitioner relied upon his own testimony to establish error in respondent's determination of the useful life of the depreciable assets in question. Although petitioner is an interested party, we believe that his testimony concerning the buildings was credible and should be given substantial weight. [3]/ Petitioner has had nearly forty years of experience in carpentry and is obviously completely familiar with the buildings in question. Cf. *313 Judge v. Commissioner,T.C. Memo. 1976-283. Therefore, after due and careful consideration of the record, we find that the fourplex had a useful life of twenty years at the time it was placed in service and the duplex had a useful life of fifteen years at the time it was placed in service.We also find that, as the duplex was acquired in June or July of 1974, petitioner is entitled to one-half of one year's depreciation on the duplex in 1974. B. Paved Parking Area.
Petitioner assigned a five-year useful life for the paved parking areas at his rental properties. He chose a five-year life for the paving because he had been forced to repave the parking area at the fourplex within five years of the original paving, and conditions at the fourplex and duplex were similar. Sec. 1.167(a)-1(b), Income Tax Regs., states that the useful life "shall be determined by reference to his [the taxpayer's] experience with similar property".We believe that *314 the five-year useful life assigned by petitioner is in accord with the regulations. Accordingly, we find that petitioner is entitled to depreciate the paving on the basis of a five-year useful life. As the paving was done after May 1, 1974 petitioner is entitled to one-half of one year's depreciation of the paved parking areas in 1974. As the paved area at the duplex covers approximately 600 square feet (it is 20 feet wide and 30 feet deep) and the paved area at the fourplex covers approximately 1,200 square feet (it is 30 to 40 feet wide and 35 feet deep), one-third of petitioner's cost basis for the paving should be allocated to the paved area at the duplex and two-thirds of the basis should be allocated to the paved area at the fourplex. C. Carpeting. In our judgment, petitioner did not overcome the presumption of correctness which attaches to respondent's determination of useful life for the carpeting. His testimony did not show that he possessed any special familiarity, knowledge, or experience with carpeting. Nor did he establish in his testimony his prior experience with carpeting in his rental apartments. Accordingly, respondent's determination for a five-year useful *315 life should be sustained. II. Snow Removal Expense
Respondent disallowed petitioner's deduction of snow removal expenses in the amount of $ 300 in 1973 and $ 400 in 1974, on the ground that the expenditures were not properly substantiated. Respondent does not contend that such expenses would not be deductible under section 162(a) as ordinary and necessary business expenses if they had been substantiated. We are fully persuaded that petitioner did have expenditures for snow removal. Accordingly, we must decide the amount which petitioner is entitled to deduct. Bearing heavily upon the taxpayer whose inexactitude is of his own making, Cohan v. Commissioner,39 F.2d 540 (2nd Cir. 1930), we find petitioner is entitled to a deduction of $ 200 in 1973 and $ 300 in 1974. III. Negligence.
Respondent determined that petitioner's underpayment of tax in 1973 and 1974 was due to negligence or intentional disregard of rules and regulations, and imposed the five percent addition to tax authorized by section 6653(a). There is no dispute that the taxpayer has the burden if he is accused of being negligent in regard to the making out of his tax return. The *316 authorities indicate that the taxpayer also has the burden to show that he did not intentionally disregard rules and regulations. The latter segment of the disjunctive clause is usually brought into play when a taxpayer who is aware or should be aware of a rule or regulation chooses to ignore its requirements. The taxpayer can avoid the penalty by showing no intent to disregard the rule or regulations involved. The penalty may possibly be avoided if the taxpayer because of a mistaken conception of his legal rights failed to follow the rules or regulations. Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. * * * [4/] We are persuaded that petitioner, a person of limited educational attainments, had no intent to disregard any rule or regulation, and that he was not negligent. Petitioner attempted to obtain a record of his expenditures to the best of his ability by obtaining and retaining receipts for his expenses. He entrusted all of his receipts *317 to his tax preparer so that she could prepare proper returns for him. In light of these circumstances, the fact that petitioner's records did not substantiate all of his claimed deductions does not persuade us that he was negligent or guilty of intentional disregard of respondent's rules and regulations. Hill v. Commissioner,63 T.C. 225, 251 (1974), affd. 568 F.2d 1365 (9th Cir. 1977); Robinson v. Commissioner,51 T.C. 520, 541-42 (1968), affd. and remanded for recomputation, 422 F.2d 873 (1970); Nelson v. Commissioner,T.C. Memo 1974-239; Zitzewitz v. Commissioner,T.C. Memo 1969-17. We believe that petitioner did the best that he could.Accordingly, we find that petitioner was not negligent and did not intentionally disregard respondent's rules and regulations during the years in question, and he is not liable for the addition to tax imposed under section 6653(a). To reflect the agreement of the parties on some adjustments and our conclusions with respect to the disputed issues, Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.
2. /↩ There are parking areas at the front and rear of the fourplex.However, petitioner's paving at that building was only at the rear.
*. Portions of these items were capitalized.↩
3. / The credibility of witnesses and weight to be given to evidence are determinations that the Tax Court must make. Golden Construction Co. v. Commissioner,228 F.2d 637↩ (10th Cir. 1955).
4. /Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967), cert. denied 389 U.S. 1044↩ (footnotes omitted).