The MERCHANTS NATIONAL BANK
OF TOPEKA, Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 75–1921.

United States Court of Appeals,
Tenth Circuit.

April 27, 1977.

Murray F. Hardesty, Topeka, Kan. (Bryon R. Schlosser of Hardesty, Hall & Schlosser—Chartered, Topeka, Kan., on the brief), for appellant.

Sharon A. Calegari (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Crombie J. D. Garrett, and Carolyn R. Just, Attys., Tax Div., Dept. of Justice, Washington, D.C., on the brief), for appellee.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Merchants National Bank of Topeka, the taxpayer, constructed a new 16-story bank building at a cost of $5,545,079 and moved into it on July 1, 1969. In 1970 the Bank made additions to the building at a cost of $133,943. On its 1969 corporate income tax return the Bank claimed a half-year's depreciation for the building as completed on July 1, 1969. On its 1970 return, the Bank claimed a full year's depreciation on the building as completed on July 1, 1969, and a half year's depreciation for the 1970 additions. The Bank utilized the component method of depreciation, assigning a separate value and a separate useful life to each component part, sometimes referred to as an asset account, of the building and then calculated depreciation thereon by the double declining balance method. Reg. 1.167(a)–7(a) permits either the component method or the composite method in calculating depreciation.

In its tax return the Bank assigned a useful life to each of some 36 component parts or asset accounts of the total building. An agent of the Internal Revenue Service inspected the building and determined to his satisfaction that certain of the Bank's estimates were too short. Relying on the agent's report, the Commissioner thereafter allowed the Bank's useful life estimates on 22 of the 36 asset accounts, but on the remaining 14 asset accounts assigned longer useful life estimates than had the Bank, resulting in a decreased depreciation allowance for the years of 1969 and 1970. The Commissioner thus determined that there was a deficiency in the amount of $2?,301.14 for the year 1969 and a deficiency in the amount of $38,861.98 for the year 1970.

The Bank filed a petition in the United States Tax Court for a redetermination of the proposed deficiencies and asked the Tax Court to hold that there was no deficiency in the taxes paid by the Bank for either 1969 or 1970. As indicated, the Commissioner accepted the valuation made by the taxpayer as to each of the 36 asset accounts, and he agreed that the taxpayer could use the component approach. The only dispute related to the useful lives of 14 of the 36 asset accounts, the other 22 estimates of the Bank being accepted by the Commissioner.

In the Tax Court the taxpayer called three expert witnesses, namely, Bohl, the general contractor, Hazard, the architect, and Taggart, a real estate appraiser. Bohl and Hazard testified as to the useful lives of the various asset accounts. Taggart merely testified as to the remaining life of the building as a whole, which he believed to be 35 years.

The Commissioner called as his witness the agent who had in the first instance decided that the taxpayer's estimates of useful lives were too short as to some 14 items. This agent, who was described as a "valuation engineer," identified his report containing the useful life of each item as such had been determined by him. He gave a brief explanation of just what he had done and how he had arrived at his ultimate findings as to useful life.

The following table sets forth the various figures which were before the Tax Court:

COMPARISON OF DEPRECIATION ESTIMATES

| (Item No.) | Component | TP | Comm | W1 | W2 | TC |
|---|---|---|---|---|---|---|
| 1 | Structure (including concrete) | 50 | 65 | 50 | 45 | 55 |
| 2 | Structure - 1970 additions | 50 | 65 | 50 | 45 | 55 |
| 4 | Sprinkler | 30 | 65 | 30 | 45 | 55 |
| 6 | Plumbing-Fixtures | 10 | 30 | 10 | 20 | 20 |
| 7 | Plumbing-Equipment | 10 | 30 | 10 | 20 | 20 |
| 13 | Electrical-Lamps & Fixtures | 15 | 25 | 15 | 10 | 20 |
| 14 | Electrical-Transf. & Panels | 20 | 25 | 15 | 25 | 25 |
| 17 | Partitions & Doors | 20 | 25 | 20 | 15 | 20 |
| 18 | Partitions-1970 additions | 20 | 25 | 20 | 15 | 20 |
| 20 | Elevators | 20 | 25 | 20 | 25 | 25 |
| 21 | Switches & Gears | 20 | 25 | 15 | 20 | 20 |
| 23 | Sheet Metal (Ducts) | 25 | 65 | 15 | 18 | 55 |
| 24 | Temperature Controls | 10 | 20 | 10 | 20 | 20 |
| 25 | Hot & Chill Tower | 10 | 20 | 10 | 15 | 15 |

TP = taxpayer
Comm = Commissioner
W1 = Robert Bohl
W2 = Stuart Hazard
TC = Tax Court

Figures are useful lives
in terms of years.

In explanation of the table, the column on the extreme left is the item number, there having originally been 36 items with 14 of them now being in dispute. The second column on the left is the description of the various component parts. The figures under the column "TP" are the useful lives of the various component parts in terms of years as fixed by the taxpayer. The figures under the column headed by "Comm" represent the useful lives of the 14 component parts as fixed by the Commissioner. The figures under the columns headed by "W1" and "W2" represent the useful lives of the several units as fixed by the taxpayer's witnesses, Bohl and Hazard, respectively. The figures under the column headed "TC" represent the useful lives of the individual units as ultimately found by the Tax Court. The Tax Court's "Memorandum Findings of Fact and Opinion" appears in the *Merchants National Bank v. Commissioner* [1975] 34 T.C.M. (CCH) ¶ 33.-333 (July 17, 1975).

Before considering the useful life fixed by the Tax Court on each of the 14 disputed items, brief reference should be made to the general rules which bear upon our review of the Tax Court's findings.

█ The Internal Revenue Code, 26 U.S.C. § 167(a), provides that there shall be allowed as a depreciation deduction a reasonable allowance for exhaustion, wear and tear, including a reasonable allowance for obsolescence, either of property used in a business or of property held for the production of income. The purpose of a deprecia-

tion deduction is to permit a taxpayer to take a ratable deduction for assets used in its trade or business as they wear out.

Regulation 1.167(a)–1(b) sets forth the relevant considerations for estimating useful life as follows:

> For the purpose of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements.

Part II of Rev.Proc. 62–21, 1962–2 C.B. 418, which was in effect in the years of 1969 and 1970, provides as follows:

> The determination of the useful economic life of an asset is a matter of judgment and estimate. For this reason, it is the policy of the Internal Revenue Service generally not to disturb depreciation deductions. Therefore, adjustments in the depreciation deduction should not be proposed unless there is a clear and convincing basis for a change. The procedures set forth herein are to be followed in determining whether there is a clear and convincing basis for a change. These procedures are designed to provide taxpayers with a greater degree of certainty in determining the amount of their depreciation deductions and to provide greater uniformity in the audit of these deductions by the Internal Revenue Service.

From the foregoing we learn that the useful economic life of an asset is a matter of "judgment and estimate," and that although the Internal Revenue Service generally accepts the depreciation schedule as fixed by taxpayer, it is not bound by the taxpayer's determination of the matter and may make adjustment if there be a "clear and convincing" basis for such adjustment.

The taxpayer emphasizes the "clear and convincing" language, and asserts that there was no "clear and convincing" basis in the instant case for a change in the schedule proposed by the taxpayer. However, this policy statement in no wise changes the well established rule that the Commissioner's determination, once made, is presumptively correct and that the burden is on the taxpayer to show error. *Ruidoso Racing Association, Inc. v. Commissioner*, 476 F.2d 502 (10th Cir. 1973) and *Coors Porcelain Company v. Commissioner*, 429 F.2d 1 (10th Cir. 1970). Furthermore, findings of fact made by the Tax Court will not be reversed on appeal in this Court unless they be clearly erroneous. *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). *See also House Beautiful Homes, Inc. v. Commissioner*, 405 F.2d 61 (10th Cir. 1968) and *Knuckles v. Commissioner*, 349 F.2d 610 (10th Cir. 1965). The determination of the useful life of a building or of its component parts is a factual one, and hence will not be reversed on appeal unless clearly erroneous. *Coors Porcelain Co. v. Commissioner*, 429 F.2d 1 (10th Cir. 1970).

A finding is clearly erroneous when the reviewing court, on a review of all the evidence, is left with "a definite and firm conviction that a mistake has been committed," even though there may be some evidence to support the finding. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Our review of the evidence before the Tax Court does not leave us with any firm belief that a mistake has been made, and we therefore affirm.

Reference will now be made to the table set forth above. We note first that as to items 17, 18 and 21 the Tax Court set the useful life of the component part at the same figure used by the taxpayer. We assume the taxpayer is not really complaining about that.

As concerns items 14, 20, and 24, the useful life fixed by the Tax Court was the same as that determined by the Commissioner, and was also the same as the determination made by one of taxpayer's own witnesses, namely, Hazard, the architect. It would be rather difficult to hold that such was not supported by substantial evidence.

As concerns items 6, 7, and 25, the determination by the Tax Court was midway between the determinations made by the taxpayer and the Commissioner, and, significantly, were the same as that fixed by one of the taxpayer's expert witnesses, again the witness Hazard. The Tax Court's determination as to these three items is not in our view clearly erroneous.

Eliminating, then, the foregoing nine items, namely items 6, 7, 14, 17, 18, 20, 21, 24, and 25, there remain for consideration only five items. As to items 1 and 2, the taxpayer estimated the useful life of each to be 50 years, and the Commissioner fixed the estimated life to be 65 years. The Tax Court set the useful life to be 55 years. These findings were well within the range of the evidence.

Item 4, the sprinkler system, was assigned a useful life by the taxpayer of 30 years, whereas the Commissioner fixed it at 65 years. The Tax Court found it to be 55 years, and we cannot characterize such as clearly erroneous.

The useful life of item 13, electrical lamps and fixtures, was set by the taxpayer at 15 years, and by the Commissioner at 25 years, with the Tax Court setting it at 20 years. The useful life of item 23, sheet metal ducts, was set by the taxpayer at 25 years and by the Commissioner at 65 years, with the Tax Court fixing it at 55 years.

We cannot say that either of these is outside the range of the evidence.

In this Court the taxpayer does not really argue as to specific items, but asserts that its evidence, consisting of the testimony of three witnesses, was, or should have been more convincing than that of the Commissioner, who relied on the report and testimony of his agent. As a matter of fact the Tax Court in many instances did adopt the determinations made by the taxpayer's witnesses, and what the taxpayer really complains about is that the Tax Court did not adopt the estimates of its witnesses as to every single item. This the Tax Court was not required to do. The weight of the evidence does not necessarily depend on the number of witnesses called by a party, and the credibility to be given a witness is a matter for the Tax Court. *Golden Construction Co. v. Commissioner*, 228 F.2d 637 (10th Cir. 1955).

Additionally, and this is perhaps the main thrust of the appeal, complaint is made that the Tax Court made its determinations in a rather hit-or-miss fashion and by the flip of a coin. In this regard the taxpayer claims that if the estimated useful lives used by the taxpayer and by the Commissioner on a particular component part differed by more than five years, the Tax Court simply split the difference, and that if the estimated lives used by the taxpayer and the Commissioner were only five years apart on a particular item, then the Tax Court, in alternate fashion, would accept first the Commissioner's figure, then the taxpayer's figure, and so on. We do not believe this charge is borne out by the record. In any event, it is not our function, nor that of counsel, to attempt to psychoanalyze the Tax Court and go behind its written findings and speculate as to its thinking processes. Our task is simply to determine whether the Tax Court's several findings are supported by evidence and are not clearly erroneous. We conclude that the Tax Court's findings in the instant case are well within the range of the evidence.

Decision affirmed.