**William L. RILEY and June E. Riley, Plaintiffs-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.**

**No. 79–2019.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 20, 1981.

Decided May 20, 1981.

---

James L. Norris, of Harlen, Norris & Picotte, Helena, Mont., for plaintiffs-appellants.

Philip I. Brennan, Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Richard W. Perkins and Stephen J. Gray, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief), for defendant-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

William L. Riley (William) [1] appeals from an adverse decision entered by the United States Tax Court (Tax Court) holding that he was not entitled to a deduction under 26 U.S.C.A. § 215 [2] for certain payments made

---

1. William's present wife, June, is set forth as a party herein only because she filed a joint tax return with William during the tax years in question.

2. Section 215 provides:

(a) General Rule.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. Section 71 referred to above, 26 U.S.C.A. § 71, entitled Alimony and Separate Maintenance Payments, provides in part:

(a) Decree of divorce or separate maintenance.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic pay-

to his former wife, Ruth F. Riley Adam (Ruth) during the taxable years 1972 and 1973. Jurisdiction on appeal vests pursuant to 26 U.S.C.A. § 7482. The relevant facts are not in dispute.

William and Ruth were married on September 5, 1942, in Sheridan, Wyoming. At the time of their marriage, William had a few thousand dollars in assets and Ruth had none. Shortly after their marriage William commenced working at Riley Motors, a car dealership owned by his father. At the time of the Tax Court trial, William was still employed at Riley Motors.

During the early years of their marriage Ruth occasionally worked at Riley Motors. She helped out in the office, filled in for sick employees, and assisted in the preparation of monthly statements. Ruth was paid for her work performed at Riley Motors.

During the course of their marriage, William and Ruth acquired jointly owned property, including a residence, stocks, insurance and savings with a net value of $51,030.00. In addition, William had acquired, by gift, 420 shares of Riley Motors, valued at $100,000.00. Ruth had acquired, by inheritance from her father, certain real estate in and about St. Louis, Missouri, valued at $85,000.00.

Ruth was granted a divorce from William on January 6, 1971. Incorporated into the divorce decree was a "Property Settlement Agreement and Stipulation" (agreement) entered into by Ruth and William on January 5, 1971, by virtue of which Ruth received net assets of $125,580.00, which included the real estate she had inherited from her father, and William received net assets of $98,025 which included the shares of Riley Motors gifted to him by his father. The agreement also provided that Ruth would receive $36,300 from William, payable in monthly installments of $300 each:

> The Defendant agrees to pay unto the Plaintiff the total sum of Thirty-six Thousand Three Hundred Dollars ($36,300) in monthly installments of Three Hundred Dollars ($300) each month, the first installment being due and payable on January 6, 1971 and a like amount on the sixth day of each month thereafter until the total sum of Thirty-six Thousand Three Hundred Dollars ($36,300) has been paid. The obligation to pay such amount of Thirty-six Thousand Three Hundred Dollars ($36,300) is unconditional and shall be binding upon the heirs, executors, administrators and assigns of the Defendant and shall be paid unto the Wife or her heirs, administrators or assigns if she dies before the payment has been made in full. The Husband shall execute such policy payment instructions on the policies of insurance described in paragraph 2(e) above as will cause the proceeds to be applied to the payment of such amount of Thirty-six Thousand Three Hundred Dollars ($36,300) as may be unpaid at the time of his death. The trust principal hereinafter described in paragraph 4 shall also be applied to the payment in full of the obligation due and owing unto the Plaintiff in the event of Defendant's death if the policy proceeds be insufficient to pay in full the sum of Thirty-six Thousand Three Hundred Dollars ($36,300).

[R., Vol. III, Exhibit 9–I at pp. 3–4]. The final paragraph of the agreement provided:

> That this agreement is intended to be and shall be a full, final and complete settlement of all property rights that either might have in the estate of the other, whether arising from the right of inheritance, or the marital relationship, and neither party shall assert any claim, demand, or right against the other except as herein contained in this agreement in the action pending between them for divorce or in the case of the death of either party prior to the trial of this action for divorce or thereafter.

ments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[R., Vol. III, Exhibit 9–I at p. 5].

Subsequent to the entry of the divorce decree, William regularly paid Ruth $300 a month. On his tax returns for both 1972 and 1973, William deducted the $3,600 so paid as alimony. On July 7, 1976, in a statutory notice, the Internal Revenue Service (IRS) disallowed these deductions in their entirety. Thereafter, on September 2, 1976, William filed a petition in the Tax Court, alleging:

(a) For the tax years 1972 and 1973, Petitioner, William L. Riley, paid the sum of $3,600.00 for each year, to his ex-wife, Ruth F. Adam, pursuant to the Decree of Divorce entered by the District Court for the Fourth Judicial District, Sheridan County, Wyoming. Mrs. Adam paid income tax on said amounts for said years, but later filed a claim for refund which was investigated by the Internal Revenue Service which, at all levels, to the present time, has found against her. Said payments by Petitioner, William L. Riley, did constitute alimony under the terms of the Internal Revenue Code.

[R., Vol. I, at p. 5].

On April 8, 1977, in *Adam v. United States*, 429 F.Supp. 38 (D.Wyo.1977), in an action for refund of income taxes paid by Ruth, the court ruled that the $300 monthly payments to Ruth were in fact property settlement payments, not alimony or support payments, and, as such, not includible in Ruth's gross income. The court made eight specific conclusions of law, including:

4. That the controlling factor where the agreement is ambiguous is the intent of the parties to the agreement as determined by the surrounding facts and circumstances. The Property Settlement Agreement in this case is not ambiguous and it is not necessary to look beyond it to determine that these payments were in fact property settlement payments resulting from a division of the marital property;

5. That the monthly payments provided for in the agreement constituted division of the property payments and not alimony or support payments to the wife;

6. That payments made to a former wife having all the elements and characteristics of division of capital including the fact that the payments were to be made without regard to the death or remarriage of the former wife and which have none of the elements or characteristics of support or alimony payments arising out of a general obligation to support a divorced wife, are not includable in the wife's income as alimony or payments in lieu thereof even if made over a period greater than 10 years from the date of the divorce decree. See *Mills v. Comm. of Int. Rev.*, 442 F.2d 1149 (10th Cir. 1971); *McCombs v. Comm. of Int. Rev.*, 397 F.2d 4 (10th Cir. 1968);

7. That these payments are not reportable in the income of the plaintiff under the provisions of Section 71 of the Internal Revenue Code of 1954:

429 F.Supp. at p. 41.

A Tax Court hearing on William's petition was subsequently held on May 23, 24, 1978. During the course of the hearing, Ruth's attorney stated:

Q [By Attorney Stewart C. Walz] Yes, and was there negotiations as to why it was a fixed amount between you and Mr. Lonabaugh?

A [By Attorney Henry Burgess] Yes, we were trying to equalize their property, and this $36,300.00 came out somewhere in the nature of an equal division between the respective parties.

[R., Tax Court Transcript, at p. 97].

Ruth's attorney also stated:

My analysis was that anything either one of these parties had acquired after marriage of some 28 or—I think it was about 28 years, so far as our divorce law is concerned it's considered joint property. The statute says you make a fair and equitable division and the cases say that generally a fair and equitable division is a equal division as nearly as can be made. Having—regards the circumstances under which the parties we're being left, I think is the way the statute says. Then that's what my impression was when we

were negotiating and that was the goal towards which we were negotiating.

Q  What was the reason that the amount of cash received by Mrs. Riley was not taken in a lump sum immediately?

A  Mr. Riley couldn't pay, he didn't have the cash.

Q  Would you have taken a lump sum?

A  Yes, indeed, we preferred it.

[R., Tax Court Transcript, at p. 106].

In ruling that William's monthly payments to Ruth were not deductible, the Tax Court found, *inter alia*:

The sole issue for decision is whether petitioner is entitled to a deduction under section 215 for payments made to his former wife pursuant to a divorce decree.

Section 215 allows a husband to deduct payments made to his wife if the payments are includible in her gross income under section 71. Section 71(a) provides that if a wife is divorced or legally separated from her husband she must include in her gross income periodic payments received by her in discharge of a legal obligation which, because of the marital relationship, was imposed on her husband by the separation agreement or divorce decree. However, it is well settled that where, upon divorce or separation, a husband makes payments in satisfaction of the property rights of his wife, the amounts received by the wife are capital in nature and are neither includible in her gross income under section 71 nor deductible by the husband under section 215.

\*   \*   \*   \*   \*   \*

The dominant factor in determining whether the payments were part of a property settlement or whether they constituted alimony is the intent of the parties. *Phinney v. Mauk*, 411 F.2d 1196, 1198 (5th Cir. 1969); *Wright v. Commissioner*, 543 F.2d 593, 598 (7th Cir. 1976). The courts have also looked to other objective factors as aids in determining such intent. Factors held to be indicative of property settlement payments are (1) the presence of a fixed sum, (2) the fact

that the payments are not related to the husband's income, (3) the continuation of the payments without regard to the remarriage or death of the wife, (4) the fact that the wife relinquished property interests in return for the payments, and (5) the fact that the husband's obligation to make the payments is secured.

\*   \*   \*   \*   \*   \*

In the case at bar, the evidence as to whether petitioner and Ruth intended the payments to be alimony or part of a property settlement is, not surprisingly, contradictory. Nevertheless, it is clear from the testimony of both petitioner and Ruth that they intended to achieve an equal division of their marital property through the "Property Settlement Agreement." Moreover, the objective factors indicative of a property settlement are present in this case. Under the terms of the agreement, petitioner was obligated to pay Ruth the fixed sum of $36,300 in monthly installments of $300. This monthly payment was not subject to change should petitioner's or Ruth's income subsequently increase or decrease. In addition, petitioner was obligated to continue the payments even though Ruth remarried and if she died petitioner was required to make the remaining payments to her administrator, heirs, or assigns.

[R., Vol. I, pp. 66–67, 69, 70]. [Footnotes omitted].

The sole issue on appeal is whether William's payments to Ruth were in discharge of a legal obligation arising out of the marital relationship, and therefore deductible under § 215, or whether the payments were part of a property settlement and not deductible. *See Mills v. Commissioner of Internal Revenue*, 442 F.2d 1149 (10th Cir. 1971).

The deductibility of such payments must, of course, be addressed on a case by case basis. In *McCombs v. Commissioner of Internal Revenue*, 397 F.2d 4 (10th Cir. 1968) we stated:

For income tax purposes, Section 71 is directed toward periodic payments made

to a wife, or former wife, as alimony or support money. The prerequisite of alimony or support also applies to the provisions of Section 71(c) for treating installments on a principal sum which may be paid over more than 10 years as periodic payments. The statutory purpose is to permit a husband, or former husband, to deduct from his gross income such periodic payments which are made to satisfy a legal obligation arising out of a marital or family relationship, and to tax the payments to the person receiving the income. S.Rep.1631, 77 Cong.2d Sess. p. 83; 5 Mertens Law of Federal Income Taxation, § 31A.01a; *Bardwell v. C. I. R.*, 10 Cir., 318 F.2d 786; *MacFadden v. C. I. R.*, 3 Cir., 250 F.2d 545, cert. denied 356 U.S. 968, 78 S.Ct. 1007, 2 L.Ed.2d 1074. Sections 71 and 215 apply only where the legal obligation to pay periodic installments arises out of a family or marital relationship in recognition of the general liability to support a wife or family. H.Rep.No.2333, 77 Cong.2d Sess. p. 72 (1942–2 Cum.Bul. 372, 428.) In *Bardwell v. C. I. R.*, supra, 318 F.2d at 789, we said that Congress sought to accomplish this purpose "while at the same time permitting a divorced wife or husband to receive a division of capital tax free." The stated cash sum of $67,000 in the instant case has all the elements and characteristics of a division of capital and none of support or alimony payments arising out of the general obligation to support a divorced wife. The obligation to pay is absolute. The discharge of the obligation through an installment note was at the election of McCombs, and the liability is the same as though the note had been given to secure payment of a loan. We agree with the Tax Court that these payments were not in the nature of or in lieu of alimony or support money, but were to satisfy a $67,-000 property right secured by McComb's note and, therefore, not deductible from McComb's gross income and were not income to his former wife.
397 F.2d at pp. 7–8.

Once the Tax Court has found, as here, that the payments were made in accordance with a property settlement and pursuant to a division of capital, and were therefore not in the nature of alimony, such finding must be considered controlling unless clearly erroneous. *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Merchants National Bank of Topeka v. Commissioner of Internal Revenue*, 554 F.2d 412 (10th Cir. 1977); *Ruidoso Racing Association, Inc. v. Commissioner of Internal Revenue*, 476 F.2d 502 (10th Cir. 1973); *Hogue v. Commissioner of Internal Revenue*, 459 F.2d 932 (10th Cir. 1972). In order to reverse the Tax Court, a reviewing court must be left with a definite and firm conviction that a mistake has been made. *Merchants National Bank of Topeka, supra; House Beautiful Homes, Inc. v. Commissioner of Internal Revenue*, 405 F.2d 61 (10th Cir. 1968). Furthermore, a husband's intentions relative to the payments made to an ex-wife do not affect their deductibility, *Moore v. United States*, 449 F.Supp. 163 (N.D.Tx.1978). Self serving assertions must always be balanced against the surrounding circumstances. *Williams v. Commissioner of Internal Revenue*, 627 F.2d 1032 (10th Cir. 1980). In each instance, the incidence of taxation depends on the substance of a transaction, and the government may look at the realities of a transaction to determine its tax consequences, despite the form. *Hamlin's Trust v. Commissioner of Internal Revenue*, 209 F.2d 761 (10th Cir. 1954).

William argues the Tax Court's decision denying the deductibility of his payments should be reversed because it does not comport with or follow our *Hayutin v. Commissioner of Internal Revenue*, 508 F.2d 462 (10th Cir. 1974). We disagree.

In *Hayutin, supra*, we held, *inter alia*, that in reviewing a state court divorce decree involving both a property settlement and monthly payments, for a determination of federal income tax consequences, we must look to all the circumstances and the true nature of the transfer under applicable state law. We further held that the specific characterization placed upon the transfer

of property by a state court in a property settlement is not controlling for tax purposes. Similar decisions have been rendered by other courts. *See Wright v. Commissioner of Internal Revenue*, 543 F.2d 593 (7th Cir. 1976).

■ Applying the *Hayutin, supra*, holding to the facts herein we hold that the Tax Court properly determined that William's payments to Ruth were not deductible under § 215. In looking at all the circumstances and the true nature of the payments we observe: the $36,300 figure was an attempt to equalize the property of William and Ruth; Ruth would have preferred to have received a lump sum payment of $36,300, but could not, because William did not have the funds; William's obligation to pay was set forth in a property settlement agreement, in which the word alimony is not used; unlike alimony, the obligation to pay the $36,300 was unconditional and binding upon the heirs, executors, administrators and assigns of William; the $36,300.00, or any unpaid portion was to be paid to Ruth's heirs, administrators, or assigns in the event of her death prior to full and complete payment; Ruth's remarriage would not terminate William's obligation to pay the full $36,300; William's payment was secured and guaranteed by an insurance policy and the principal of a trust. These factors, singularly and collectively, indicate that the payments to Ruth were definitely in the nature of a property settlement and not alimony.

Scrutinizing the payments under applicable state law, *i. e.*, the law of Wyoming, leads us to firmly conclude that the payments were in the nature of a property settlement.

*Storm v. Storm*, 470 P.2d 367, (Wyo.1970), declares that property settlements are to be effectuated in a manner which is deemed to be just and reasonable. In the instant case, it is undisputed that Ruth and William did not participate in the property settlement negotiations. Rather, counsel for Ruth and

William negotiated the property settlement, and attempted to "equalize their property" and achieve something "in the nature of an equal division between the respective parties." [R., Tax Court Transcript, at p. 97]. In a divorce suit, a just and equitable settlement of the parties' property rights under W.S.1957, § 20–2–114 cannot always be equated with quantitative equality. *Kane v. Kane*, 577 P.2d 172 (Wyo.1978). Just and equitable divisions of property made pursuant to W.S.1957 § 20–63, are likely to be unequal and such an award is not necessarily an abuse of discretion. *Barbour v. Barbour*, 518 P.2d 12 (Wyo.1974).

The Tax Court's decision herein is buttressed by *Warren v. Warren*, 361 P.2d 525 (Wyo.1961) in which the Court opined:

Alimony granted as support and maintenance terminates upon the death of either of the parties . . . *This is not true, however, of payments which are themselves an integral part of the adjustment of property rights.*

361 P.2d at 527. [Emphasis supplied].

The monthly payments herein were clearly "an integral part of the adjustment of property rights". The agreement was an attempt to equalize the property of the parties. As such, we hold that the Tax Court properly considered all of the circumstances and the true nature of the transfers herein under the applicable law and did not err in assessing the non-deductibility of the payments.

WE AFFIRM.