JUDITH A. MIDDLEMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JERRY MIDDLEMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Middleman v. Commissioner
Docket Nos. 9084-82 and 9085-82
United States Tax Court
T.C. Memo 1983-566; 1983 Tax Ct. Memo LEXIS 222; 46 T.C.M. (CCH) 1383; T.C.M. (RIA) 83566; September 13, 1983. Philip J. Starr, for the respondent. SCOTT MEMORANDUM *223 OPINION SCOTT, Judge: These cases were assigned to Special Trial Judge Fred R. Tansill, for hearing on July 6, 1983 at Washington, D.C. on petitioner's Motion for Summary Judgment in Docket No. 9084-82 and respondent's Motion for Partial Summary Judgment in Docket No. 9085-82. After a review of the record, we agree with and adopt the Special Trial Judge's Opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE TANSILL, Special Trial Judge: These cases came on for hearing on July 6, 1983 at Washington, D.C., on petitioner's Motion for Summary Judgment in Docket No. 9084-82 and on respondent's Motion for partial Summary Judgment in Docket No. 9085-82. Judith A. Middleman (Judith) filed a Motion for Summary Judgment under Rule 121 with this Court in Docket No. 9084-82 on January 5, 1983. On May 23, 1983 respondent filed a response not opposing, and indicating that concurrently with that response the respondent "is filing a Motion for Summary Judgment on the common issue" in Docket No. 9085-82 of Jerry Middleman (Jerry).
The respondent did, in fact, file a Motion for Partial [1] Summary Judgment on May 23, 1983 in Docket No. 9085-82 to which petitioner *224 Jerry Middleman filed objections on July 6, 1983. There is a common issue in the two cases involving the nature of payments made by Jerry to Judith in 1978 in the sum of $19,500; [2] the question is whether payments by Jerry to Judith are alimony or are the proceeds of a community property division. Jerry has claimed a deduction of alimony under section 215 and Judith has excluded the amount from income, claiming it was received as a nontaxable division of community property rather than alimony. Respondent has determined, in a statutory notice dated March 9, 1982 addressed to Judith, that the $19,500 constituted alimony, resulting in a deficiency of $6,152 for 1978. In a statutory notice of deficiency addressed to Jerry dated February 19, 1982, the respondent determined that a claim for alimony deducted *225 on Jerry's return should be reduced by $21,000 because that amount had not been established to be alimony payments as defined in section 71 of the Code. Both Judith and Jerry filed petitions in this Court which, in each case, denied and placed in controversy the respondent's adjustments relating to the alleged alimony. [3]
From the foregoing it is apparent that the respondent has taken inconsistent positions in the two docket numbers and is, in effect, a stakeholder leaving it up to the Court to determine which of the petitioners is correct. This Court is being asked to decide what was the true nature of the payments made by Jerry to Judith in 1978. Because of the nature of the controversy in these two cases, both Motions for Summary Judgment were placed on the June 6, 1983 Motions calendar in Washington, D.C. Neither of the petitioners was present in person. A communication to the Court by Judith's counsel was received at the time of the Motion hearing in support of Judith's position. Also available was her affidavit and a memorandum of law in support *226 of her Motion for Summary Judgment. Respondent's Motion for Partial Summary Judgment in Jerry's case was objected to by Jerry on the grounds that there is a genuine issue as to material facts relating to the nature of the payments by Jerry to Judith and, therefore, Summary Judgment is improper. No statement in support of this objection was given and the only facts referred to in the memorandum in support of the objection were statements in the Decree of Dissolution which is before the Court in its entirety.
All facts necessary to the resolution of the issue raised by the Motions for Summary Judgment are in the record and those facts are not in controversy. The only question is one of law as to the nature of the payments in question. The statement on behalf of Jerry which is available in the record points to no factual issue which remains in controversy. The respondent has filed an affidavit and a Memorandum of Points and Authorities in support of his Motion for Partial Summary Judgment in Jerry's case. Because of the identity of issues in the two docket numbers we have taken both cases under advisement. The nature of the motions pending before the Court is such that there *227 is no necessity for a separate trial upon the merits. Rule 121(a) of the Court's Rules of Practice and Procedure authorizes the filing of Summary Judgment Motions. Under Rule 121(b) where the pleadings, admissions and any other acceptable materials, together with affidavits, show that there is no genuine issue as to any material facts, a decision may be rendered as a matter of law. The same rule permits a partial summary adjudication to be made where not all of the issues in a given case are being disposed of, which is the situation in Jerry's case. Since we conclude from the record that no material facts are in controversy, we consider it is in the best interest of both parties to dispose of the issue of the nature of the payments by Jerry to Judith at this time. Jerry and Judith were married in 1964. Three children were born of the union. They were subsequently divorced in January, 1978. During their marriage they resided together in Phoenix, Arizona. In 1978, Jerry made payments to his former wife, Judith, pursuant to the terms of a Decree of Dissolution of their marriage entered by a competent state court in Arizona. The payments here involved were made in compliance *228 with the following court order: IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the discharge of all liabilities or obligations arising as a result of the marital relationship, for * * * [Judith's] interest in the corporate holdings and '714 properties' and further as consideration of any award of additional maintenance, * * * [Jerry] shall pay to * * * [Judith] the sum of $230,000.00 by monthly payments of $1,500.00 or more on the first day of each month, commencing December 1, 1977, plus interest on the unpaid principal balance at the rate of six percent (6%) per annum from June 1, 1977; until the entire $230,000.00 plus interest has been paid in full. All payments shall be paid through the Office of the Clerk of the Court. We note that during their marriage the Middlemans resided in Arizona which is a community property state. From that location Jerry conducted a very prosperous debt collection business which was active in a number of states and in which he owned a half interest. The Final Decree of Dissolution of the Middleman's marriage was entered on January 13, 1978. Among various other findings of fact in the court's decree appears the following: 364. *229 That * * * [Judith] has sufficient property, including property apportioned to her herein, to provide for her reasonable needs and should be denied an award of spousal maintenance. Among the legal conclusions found by the court appears the following: 21. That neither party should be required to pay spousal maintenance to the other except as otherwise herein provided. We are unable to find any other provision for spousal maintenance in the 158 pages of the Decree of Dissolution which contains 378 paragraphs of Findings of Facts, 24 Conclusions of Law and 5 legal size pages of decrees. Also relevant to our problem here, is the following factual determination made by the court: 378. That the net worth of the parties' community property as of the time of trial was $1,500,000; the community interest in the corporate holdings and '714 Properties' is $500,000.00 * * *. Arguably, it appears that the sum of $230,000 represents 50 percent ($250,000) of the net worth of the various business assets owned by the marital community ($500,000), less $20,000 representing an award of tangible personal property apportioned to Judith. We must find our answer to the alimony/property *230 distribution question in section 71 and section 215 and the various regulations promulgated with respect to both sections, together with various pertinent court opinions. It is clear enough that the labels assigned to payments by a state court in a divorce decree are not conclusive for Federal tax purposes and this court's determination thereof must rest upon an evaluation of the surrounding facts and circumstances. Gammill v. Commissioner,73 T.C. 921, 926 (1980), affd. (50 AFTR 2d 82-5469, 82-2 USTC par. 9514) (10th Cir. 1982). Section 71 deals with alimony and separate maintenance payments. Subparagraph (a) of that section contains a general rule which is summarized as follows: If a wife is divorced from her husband under a Decree of Divorce, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree. From the foregoing it is immediately apparent that to constitute alimony income for a divorced wife, payments from her divorced husband must *231 be periodic, received after such decree and be in discharge of a legal obligation arising from the marital relationship. We note that under section 71(c)(2) where a sum which, by the terms of a decree, is to be paid over a period ending more than 10 years from the date of such decree, such installment payments shall be treated as periodic payments for the purpose of determining the receipt of alimony as explained above, but only to the extent of 10 percent of the principal sum paid in any one taxable year of the former wife.Here, obviously, the payment of $1,500 per month will not discharge a $230,000 obligation in 10 years or less. Therefore, the payments here would be "periodic". But this is not dispositive of the question of taxable alimony under section 71(a). Despite the payments being periodic, it is still necessary to determine if such payments are in the nature of alimony for the wife's support or are payments for the wife's interest in the marital property. Mann v. Commissioner,74 T.C. 1249, 1259 (1980). Arizona is a community property state and the decree is clear that Judith had a community property interest in at least $500,000 of assets. The *232 reciprocal provision to section 71 is section 215. It relates to alimony payments made. In the case of a divorced husband it allows a deduction for amounts paid by a husband to a former wife if such payments are includable under section 71 in the gross income of the former wife. If the payments here under consideration are really for settlement of community property rights they may not be construed to be alimony. Newbury v. Commissioner,46 T.C. 690 (1966). Whether the payments constitute alimony or a division of property is to be determined from the surrounding facts and circumstances. Gammill v. Commissioner,supra.
As a first step we resort to the state court decree with respect to the divorced couple. While this decree seems to incline toward an interpretation that neither divorcing party should be required to pay spousal maintenance to the other, Jerry contends that it is ambiguous. Our determination must be based on the entire record before us considered in light of the factors indicating the nature of the payments. In Riley v. Commissioner,649 F.2d 768 (10th Cir. 1981), affg. T.C. Memo. 1979-237, *233 the Court, at 649 F.2d 772, listed the following factors as being indicative of property settlement payments: * * * (1) the presence of a fixed sum, (2) the fact that the payments are not related to the husband's income, (3) the continuation of the payments without regard to the remarriage or death of the wife, (4) the fact that the wife relinguished property interests in return for the payments, and (5) the fact that the husband's obligation to make the payment is secured. An analysis of this record shows that all these facts are present. We note initially, that the first three tests are clearly satisified: a fixed sum of $230,000 is to be received by Judith; there is no relationship of the $1,500 in monthly payments to Jerry's income after divorce; and, the decree is clear that the payments are not to cease on Judith's remarriage or death. The record is also clear that Judith relinquished her interest in the community property in return for the payments as required in the forth test. Westbrook v. Commissioner,74 T.C. 1357 (1980). Here, under the decree the money is specified to have been awarded for Judith's "interest in the corporate holdings *234 and '714 properties.'" The context of the court's decree indicates that together these constituted the former husband's "business interests." Additionally, legal conclusion 18 in the decree, states that the court retained jurisdiction over these assets until Jerry "has paid [Judith] for her interest in said properties." As already noted above, the sum of $230,000 also can be related to Judith's share of the community property. Under Arizona law there must be a "substantially equal" division of community property in the event of divorce.[4] We would regard a 46 percent division allocated to Judith as "substantially equal" but even this is not necessary. Judith acquired title to a motor vehicle, household goods and furnishings, furniture and fixtures and a household bank account out of the marital community property. The values of these items can account for the difference between $250,000 (half of the marital community property) and the $230,000 awarded Judith. Coming to the last factor listed in the Riley opinion, a provision *235 for security, we find that under the Divorce Decree the state court required that each monthly payment of an installment due from Jerry to Judith be paid through the Office of the Clerk of the Court; the court also retained jurisdiction over the parties and the business interests until the principal sum had been discharged by Jerry; and, most meaningful, the state court awarded Judith a lien on the business interests of Jerry to secure payment of all sums due her under the decree. The fact that the principal sum bore interest at a 6 percent per annum rate on the unpaid balance is of significance in determining the nature of the payments. We conclude, therefore, that all of the facts and circumstances here demonstrate conclusively that the payments from Jerry to Judith were, in contemplation of law, distributions of community property rather than alimony payments. We so find and hold. Accordingly, the petitioner's Motion for Summary Judgment in Docket No. 9084-82 will be granted and the respondent's Motion for Partial Summary Judgment in Docket No. 9085-82 will be granted. Appropriate Orders and a Decision for petitioners in Docket No. 9084-82 will be entered.
Footnotes
1. There is another issue in the case relating to sales tax on a sale of a residence which is not included in the Summary Judgment matter (involving an alimony question).↩
2. Inconsistently, the respondent disallowed $21,000 of the alimony deduction claimed by Jerry while taxing Judith with alimony income of $19,500. The latter amount is the correct amount at issue.↩
3. This term is used simply as a descriptive matter and is not intended to be dispositive of the issue before the Court.↩
4. Hatch v. Hatch,547 F.2d 1044, 113 Ariz. 130, 547 P.2d 1044, Ariz. Rev. Stat. sec. 25-318↩ (1981).