**Walter X. SLAWSKI and Desiree Slawski**

v.

**The UNITED STATES.**

**No. 155–83T.**

United States Claims Court.

Oct. 18, 1984.

---

Jonathan D. Sokoloff, Philadelphia, Pa., for plaintiffs; Daniel E. Farmer, Philadelphia, Pa., attorney of record. Diamond, Polsky & Bauer, Philadelphia, Pa., of counsel.

Abraham Gutwein, Washington, D.C., with whom were Asst. Atty. Gen. Glenn L. Archer, Jr., Theodore D. Peyser, Jr., and Robert S. Watkins, Washington, D.C., for defendant.

## ORDER

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The basic question before the court in this case is whether a $33,000 payment which plaintiff Walter X. Slawski made (along with other sums) to his former wife in 1980 could properly be deducted as alimony in the joint income tax return for 1980 filed by plaintiff Walter X. Slawski and his present wife, plaintiff Desiree Slawski.

An alimony deduction for the $33,000 payment mentioned in the preceding paragraph was claimed by the plaintiffs in their joint income tax return for 1980. This deduction was later disallowed by the Internal Revenue Service, which issued a notice of deficiency and required the plaintiffs to pay additional income tax, plus interest. The plaintiffs are seeking in the present action to recover the amount so paid, together with statutory interest.[1]

The case is now before the court on cross-motions for summary judgment, and following oral argument.

### Agreed Facts

After a marriage that had lasted for 18 years and had produced three children, Walter X. Slawski and his wife at the time, Patricia Sheehan Slawski, were separated. (In outlining their subsequent relationship, it will usually be convenient to refer to Walter X. Slawski as "Walter" and to Patricia Sheehan Slawski as "Patricia."). A year later, in 1977, Patricia sued Walter for divorce in the Superior Court, Chancery Division, of New Jersey. The subsequent proceedings were hotly contested and lengthy, and they culminated in a trial of approximately 2 months' duration.

On November 7, 1979, an oral order of divorce in favor of Patricia was issued by the New Jersey court. This was followed on February 26, 1980, by the entry of a formal written judgment of divorce.

The order of the New Jersey court directed (among other things) that Walter should pay Patricia alimony in the amount of $400 a week, and also $200 a week for the

---

1. The complaint, when filed, asserted other claims as well. In the meantime, however, the other claims have been disposed of by agreement of the parties.

support of their youngest child, pending his emancipation. In determining the amount of alimony and child support, the court stated that it considered Walter's matrimonial fault, his income, his tax bracket, and his budget at the time of the issuance of the order. The court then went on to say that it also considered the equitable distribution of the matrimonial property "in conjunction with these figures."

The authority of the New Jersey court to distribute between Walter and Patricia the assets acquired during the marriage was derived from section 2A:34–23 of the New Jersey Statutes Annotated (1981 West). That statute provides in part as follows:

> In all actions where a judgment of divorce * * * is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage. * * *

The court proceeded to consider the matrimonial assets that were available for distribution, and placed a value on each as of the date of the separation. The various assets available for distribution and their respective values, as determined by the court, were: a certificate of deposit, $40,-000; the former marital home, $240,000; the contents of the former marital home, $25,000; an automobile, $1,000; real estate located on Kay Drive, $18,000; an unimproved lot located in Locust Lakes Village, $10,000; and shares of stock in Synergistic Associates International ("SAI"), $1,600,-000.

In the distribution of the tangible marital assets ordered by the New Jersey court, Patricia received the former marital home and its contents, the automobile, and the Locust Lakes Village property, while Walter received the Kay Drive property. The court directed that the value of the certificate of deposit should be divided 50–50 between Walter and Patricia, but that the entire certificate should be delivered to Patricia, with Walter's share of $20,000 being used to defray Patricia's litigation expenses in connection with the divorce proceedings.

SAI was a corporation run by Walter virtually as a one-man operation. In lieu of ordering an actual split of the stock in SAI between Walter and Patricia, the court directed that Walter might retain all the stock, but that, in lieu of transferring part of the stock to Patricia, Walter should pay her the sum of $433,000 in installments as follows: $33,000, without interest, on or before February 7, 1980; then $40,000 a year, with interest at 8 percent on the unpaid balance, the installments to be paid on or before January 1 of each year, beginning with 1981 and continuing until the final installment, which was to be paid on or before January 1, 1990. The court's order also directed that, until Walter satisfied his obligation to pay Patricia the sum of $433,000, one million shares of SAI stock were to be held in escrow by the attorneys for Walter and Patricia.

The total value (as determined by the New Jersey court) of the matrimonial assets available for equitable distribution was $1,934,000. Taking into account the installment payments from Walter to Patricia, the New Jersey court awarded approximately 37.7 percent of the matrimonial assets to Patricia and approximately 62.3 percent to Walter. The court did not explain or state what factors led the court to conclude that such a distribution was "equitable." There was, however, a reference at one point to the marriage having lasted for 18 years; and, as indicated earlier, the court, in making the awards for alimony and child support, stated that the equitable distribution of the matrimonial assets was considered "in conjunction with these figures" for alimony and child support.

The first installment of $33,000, on the $433,000 which Walter was to pay—and did pay—to Patricia in 1980 gave rise to the present litigation.

### Statutory Provisions

The $33,000 deduction as alimony involved in this case was allegedly taken by

the plaintiffs under the authority of 26 U.S.C. § 215 (1982). This section provides in part as follows:

§ 215. Alimony, etc., payments

(a) General rule.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

It is necessary, therefore, to consider the related section 71 in determining the scope of section 215. Section 71 provides in part as follows:

§ 71. Alimony * * * payments

(a) General rule.—

(1) Decree of divorce * * *.—If a wife is divorced * * * from her husband under a decree of divorce * * *, the wife's gross income includes periodic payments * * * received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree * * * incident to such divorce * * *.

* * * * * *

(c) Principal sum paid in installments.—

(1) General rule.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, * * * shall not be treated as periodic payments.

(2) Where period for payment is more than 10 years.—If, by the terms of the decree * * *, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, * * * then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a) * * *.

In the present case, the plaintiffs assert, and the defendant concedes, that if only the bare language of 26 U.S.C. § 71 were to be considered, the $33,000 payment from Walter to Patricia involved in this case would qualify as a "periodic payment" under subsections (a)(1) and (c)(2).

## Treasury Regulation

At the time involved in this litigation, however, a Treasury Regulation (26 C.F.R. § 1.71–1 (1980)) headed "Alimony and separate maintenance payments; income to wife or former wife," supplementing 26 U.S.C. § 71, provided in part as follows in paragraph (b)(4):

(4) *Scope of section 71(a).* Section 71(a) applies only to payments made because of the family or marital relationship in recognition of the general obligation to support which is made specific by the decree * * *.

Under the Treasury Regulation just quoted, the $33,000 payment involved here would be deductible by the plaintiffs only if such payment were made in recognition of Walter's general obligation to support Patricia after the divorce.

The plaintiffs contend, first, that the Treasury Regulation, which purports to limit the scope of subsection (a) of 26 U.S.C. § 71 "to payments made because of the family or marital relationship in recognition of the general obligation to support," is in conflict with the language of subsections (a)(1) and (c)(2) of section 71, previously quoted; and, therefore, that the regulation is invalid.

There are at least three reasons why the court should uphold the validity of the regulation.

In the first place, the regulation under attack here was obviously based upon the legislative history of 26 U.S.C. § 71, because the specific language of the regulation previously quoted was derived from language that appeared in congressional committee reports discussing section 71 before its enactment. The following statement appeared in S.Rep. No. 1631, 77th Cong., 2d Sess. 84 (1942), and in H.R.Rep. No. 2333, 77th Cong., 2d Sess. 72 (1942):

* * * This section applies only where the legal obligation being discharged arises out of *the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree.* This section does not apply to that part of any periodic payment attributable to any interest in the property so transferred, which interest originally belonged to the wife, unless she received it from her husband in contemplation of or as an incident to the divorce or separation without adequate and full consideration in money or money's worth, other than the release of the husband or his property from marital obligations. [Emphasis supplied.]

Also, the circumstance that the pertinent language of the regulation has been in effect (although not always under the same number) since it was promulgated in 1957 and made effective retroactively to 1954, without any evidence of dissatisfaction by the Congress, constitutes evidence of congressional approval of the Treasury Department's interpretation of section 71(a). *Cf. Farley v. United States,* 217 Ct.Cl. 560, 576, 581 F.2d 821, 830 (1978), citing *Fribourg Navigation Co. v. Commissioner,* 383 U.S. 272, 283, 86 S.Ct. 862, 868, 15 L.Ed.2d 751 (1966), and *Helvering v. Winmill,* 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938).

In addition, this court's predecessor, the United States Court of Claims, whose published decisions are binding precedents for this court (General Order No. 1, 1 Cl.Ct. XXI (1982)), applied the regulation involved here (but then designated as § 7.71–1(b)(4)) in *Bernatschke v. United States,* 176 Ct.Cl. 1234, 1238–39, 364 F.2d 400, 404 (1966), thus indicating approval of the regulation. Also see the Court of Claims' order in *Gerlach,* No. 195–69, 201 Ct.Cl. 884 (1973).

■ Accordingly, it is determined that 26 C.F.R. § 1.71–1(b)(4) is valid and should be applied to the facts of the present case.

*Support v. Property Distribution*

The plaintiffs' fall-back position is that, at any rate, the $33,000 payment which Walter made to Patricia in 1980 was in recognition of Walter's obligation to support growing out of the former marital relationship with Patricia; and, therefore, that the $33,000 payment met the requirement of 26 C.F.R. § 1.71–1(a)(4). The plaintiffs' position on this point is opposed by the defendant, whose contrary position is to the effect that the $33,000 payment was not for Patricia's support, but was part of the equitable distribution of the marital property made by the New Jersey court in connection with Patricia's divorce of Walter.

The New Jersey court, in announcing the details of the equitable distribution of the marital assets between Patricia and Walter as an incident of their divorce, did not indicate what factors were taken into account in determining that Patricia should receive approximately 37.7 percent of the marital assets, including installment payments totalling $433,000 in lieu of a portion of the SAI stock, except for a rather cryptic reference to the marriage having lasted for approximately 18 years.

Courts have taken various factors into consideration in determining whether payments from one spouse to another spouse or former spouse in connection with a separation or divorce were support payments or incidents of divisions of marital assets. Some of these factors which are present here would lead to the conclusion that the $33,000 payment from Walter to Patricia in 1980 constituted part of the property division and not a support payment. First, the New Jersey court's reference to the marriage having lasted for 18 years was seemingly in recognition that Patricia, during the 18 years, undoubtedly contributed something to the establishment of the marital estate, at least through a supportive role; and that, upon the dissolution of the marriage, she should receive her fair share of what had been accumulated during the marriage, without regard to her legal interest, if any, in the property. *Cf. Chalmers*

*v. Chalmers,* 65 N.J. 186, 320 A.2d 478, 483 (1974); *Beard v. Commissioner,* 77 T.C. 1275, 1288 (1981). Second, the annual payments from Walter to Patricia under the divorce decree were fixed in amount and not subject to any contingencies, such as Patricia's remarriage or death. *Bernatschke v. United States, supra,* 176 Ct.Cl. at 1245–46, 364 F.2d at 408; *McCombs v. Commissioner,* 397 F.2d 4, 7–8 (10th Cir.1968). Third, the payment was not based on Walter's income. *See Bernatschke v. United States, supra,* 176 Ct.Cl. at 1246, 364 F.2d at 408; *Riley v. Commissioner,* 649 F.2d 768, 772 (10th Cir. 1981). Fourth, the New Jersey court made a separate award of alimony to Patricia. *See Beard v. Commissioner, supra,* 77 T.C. at 1285. Fifth, Walter's obligation to make the payments was secured by shares of SAI stock. *See Riley v. Commissioner, supra,* 649 F.2d at 772.

On the other hand, there are factors that could be construed as favoring the plaintiffs' position. In the first place, it has been mentioned previously that the New Jersey court stated, in announcing the amounts of alimony and child support payments for Patricia, that the equitable distribution of the marital assets was "in conjunction with these figures." *See McCombs v. Commissioner, supra,* 397 F.2d at 7. Also, Patricia received less than one-half of the property accumulated during the marriage. *See Lambros v. Commissioner,* 459 F.2d 69, 71–72 (6th Cir. 1972).

The factors referred to in the immediately preceding paragraph are not compelling. The phrase "in conjunction with" is vague and of uncertain meaning. On the one hand, it might be considered as implying that Patricia's needs for support were considered not only in determining the amount of alimony, but also, at least in part, in the determination of her share of the marital assets. On the other hand, the court might have meant that the substantial amount of Patricia's alimony was taken into account in fixing her share of the marital assets at less than half.

With respect to the circumstance that Patricia received less than half of the marital assets, it should be kept in mind that Patricia's share actually had considerable value ($729,000), and that Walter's larger share was attributable to the fact that he was permitted to keep all the SAI stock, at a value of $1,600,000 (subject to the payment of $433,000 to Patricia), apparently because he was running the corporation as a one-man operation. Moreover, it was not necessary that the marital assets in this case be divided equally between Walter and Patricia in order for the installment payments of Walter to Patricia to be considered part of the property distribution rather than support payments. *See Bernatschke v. United States, supra,* 176 Ct.Cl. at 1245 n. 7, 364 F.2d at 407 n. 7.

■ The court therefore finds that the preponderance of the evidence in this case shows that the installment payments from Walter to Patricia under the divorce decree, including the $33,000 payment in 1980, were not in the nature of support payments but, instead, were part of the equitable distribution of the marital assets.

### Conclusion

For the reasons previously stated, the court concludes that there is no genuine issue as to any material fact, that the plaintiffs are not entitled to recover, and that the defendant is entitled to a judgment as a matter of law.

Accordingly, the plaintiffs' motion for summary judgment is denied and the defendant's cross-motion for summary judgment is granted.

The clerk will dismiss the complaint.

IT IS SO ORDERED.