**Ronald R. PRATER, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 94–9002.

United States Court of Appeals, Tenth Circuit.

May 18, 1995.

---

Calvin L. Wiebe and Lois A. Lynn, Wichita, KS, for petitioner-appellant.

Loretta C. Argrett, Asst. Atty. Gen., William S. Estabrook and Linda E. Mosakowski, Attys., Tax Div., Dept. of Justice, Washington, DC, for respondent-appellee.

Before HENRY, McKAY, and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

■ Petitioner Ronald R. Prater appeals from a decision of the United States Tax Court. The only issue on appeal is whether deductions petitioner took on his federal income tax returns following a divorce were properly deductible as alimony payments under Internal Revenue Code (I.R.C.) § 215, or if part or all were nondeductible property settlement payments.[1]

When petitioner and his wife were divorced in 1983, the Kansas state court issued a letter ruling indicating how it intended to divide their property. Specifically, the letter provided that an oil and gas lease identified as the Binger lease was to go to petitioner, but that petitioner was to pay Joan Prater, his former wife, a percentage of the returns from the lease for 121 months. The journal entry of divorce reflecting the court's decision was filed after the letter ruling, and specified the nature and form of the Binger lease payments.

The journal entry contains sections labeled "Award of Property to Plaintiff" and "Award of Property to Defendant," but the Binger lease payments are addressed in a section of the journal entry labeled "Method of Alimony Payment." III R. Ex. 15–O. That section provides that petitioner shall pay to Joan Prater thirty-three percent of the gross income, reduced by an equal percentage of operating expenses, as alimony and support. The section titled "Period of Alimony Payments" dictates that monthly payments continue for 121 months or until Joan Prater's death or the sale of the lease. The journal entry also provides that if the court approves the sale of the lease within 121 months from the filing of the journal entry, the net sale proceeds shall be divided between petitioner (sixty-seven percent) and his ex-wife (thirty-three percent). Finally, the court reserved jurisdiction over "disputes between the parties as to the method, amount, and payment of the alimony due, and in regard to any manner concerning the operation of the Binger lease." *Id.* at 6–7.

Joan Prater later filed a motion to alter or amend the journal entry, requesting that the court order petitioner to sell the lease and divide the proceeds equally or, in the alternative, that the court divide the lease by assigning one-half of the working interest to her and one-half of the working interest to petitioner. She specifically requested that the division be designated as an award of property and not an award of alimony. She acknowledged in her brief supporting the motion that the intent of the court was "that the alimony payments based on 33% of the Binger lease be deductible by [petitioner] and ordinary income to [her]." III R. Ex. 19–S at 2–3. The court responded to that motion by stating that it had "reconsidered whether alimony should be granted in the manner set out in the Journal Entry of Divorce and chose not to grant to Defendant an interest in the Binger Lease in lieu of alimony." *Id.* Ex. 23–W at 2.

Pursuant to the court's decree, petitioner paid Joan Prater $74,823.00 in 1984, $139,828.69 in 1985, and $91,846.40 in 1986. Proceeding on the assumption that those payments were properly characterized as alimony for federal income tax purposes, petitioner claimed deductions in those amounts under I.R.C. § 215 on his tax returns for those years. The Internal Revenue Service disallowed the deductions and issued a notice of deficiency. Petitioner took his case to the Tax Court.

The Tax Court determined that only $2,000 per month, or $24,000 of each year's total

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

payments, were deductible as alimony and that the balance were nondeductible property settlement payments. On appeal, petitioner argues that he was entitled to deduct as alimony the entire amount of those payments.

■ The Tax Court's determination that only a portion of petitioner's payments to Joan Prater were deductible alimony and that the remainder were property settlement payments is a question of fact. *Gammill v. Commissioner*, 710 F.2d 607, 609 (10th Cir. 1982). We review factual determinations for clear error, and we will reverse only if we are "left with a definite and firm conviction that a mistake has been made." *Riley v. Commissioner*, 649 F.2d 768, 773 (10th Cir.1981). We have reviewed the entire record in this case, and we are left with a definite and firm conviction that a mistake has been made, and that we must reverse.

■ The characterization of petitioner's payments as either alimony or property settlement, and the federal tax consequences thereof, is a question of federal, not state law. *See Gammill*, 710 F.2d at 609. This court recognizes five factors, other than the intent of the parties, to guide the characterization of payments as either alimony or property settlement for tax purposes. Payments are to be regarded as part of a property settlement when "(1) there is a fixed sum, (2) the payments are not related to the obligor's income, (3) the payments are to continue regardless of the obligee's death or remarriage, (4) the obligee gave consideration for the payments, and (5) the obligor has put up security to insure payment." *Id.* at 610 (citing *Riley*, 649 F.2d at 772). In the instant case, only the third factor favors the conclusion that petitioner's payments were part of a property settlement, and that only partially. The journal entry of divorce makes no provision regarding the effect Joan Prater's remarriage would have on the payments, but it does provide that payments would cease upon her death. The absence of a cessation upon remarriage provision does not conclusively establish the payments as property settlement. The provision for cessation of payments upon death favors characterization as alimony because the ex-wife would not be able to pass any payment obligation on to her heirs or legatees. With regard to the remaining factors listed in *Gammill*, the journal entry specifies no fixed sum; the payments are related to petitioner's income because the Binger lease proceeds affect and apparently represent a substantial part of his income; the ex-wife provided no consideration;[2] and the court required no security to insure the payments beyond its direction to share the proceeds if petitioner should sell the property before the payments were to cease.

This case does not involve a separation or property settlement agreement by which the parties manifest their own intentions. We are mindful that the state court's characterization of petitioner's payment obligation as alimony is not controlling. *See Riley*, 649 F.2d at 773–74. But that court divided the property and determined alimony and support, so its intent is relevant. The Kansas court clearly intended to impose an alimony obligation in the form of payments by petitioner of a percentage of the Binger lease proceeds. When Joan Prater requested that the court alter the journal entry of divorce to give her a share of the Binger lease and to characterize the payments as property settlement, as opposed to alimony, the court specifically refused, and reaffirmed its characterization of the payments as alimony. Also significant is the court's choice of 121 months as the duration of petitioner's obligation, because that is the maximum length of a main-

---

**2.** The Tax Court cited this court's decision in *Hayutin v. Commissioner*, 508 F.2d 462 (10th Cir.1974), as authority for its allocation of petitioner's payments between alimony and property settlement. In that case, however, the wife had actual ownership rights in specific property items that she transferred to the husband in the divorce, as opposed to the undefined species of common ownership rights that vested upon filing of divorce under Colorado law. *Id.* at 469.

Based on that fact, we held that some of the husband's payments must have been made to acquire the actual ownership rights transferred by the wife. *Id.* Unlike *Hayutin*, the record in this case does not reveal any transfer of specific property ownership interest by Joan Prater to petitioner that would justify the Tax Court's allocation of petitioner's payments between alimony and property settlement.

tenance award under Kansas law. Kan.Stat. Ann. § 60–1610(b)(2).

In addition, it is apparent from the record that the Kansas court and the parties were conscious of the tax consequences of the court's actions. Joan Prater may not have approved of the court's action in granting her alimony, but her disapproval does not change the nature of the award. The record does not support the Tax Court's allocation of a portion of the payments to property settlement.

We hold that the amounts in question are, in their entirety, alimony payments and, as such, are deductible by petitioner pursuant to I.R.C. § 215. We therefore REVERSE the Tax Court's decision to the extent it identifies part of the payments as property settlement and nondeductible.