DAVID M. DALEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Daley v. Commissioner
Docket No. 20299-90
United States Tax Court
T.C. Memo 1991-555; 1991 Tax Ct. Memo LEXIS 603; 62 T.C.M. (CCH) 1197; T.C.M. (RIA) 91555; November 5, 1991, Filed *603 Decision will be entered for the respondent. David M. Daley, pro se. S. Mark Barnes, for the respondent. DINAN, Special Trial Judge. DINAN
MEMORANDUM OPINION This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies of $ 2,283 and $ 3,016 in petitioner's Federal income tax for the taxable years 1986 and 1987, respectively. After concessions by petitioner, the issues for decision are: (1) Whether, and to what extent if any, petitioner is entitled to deductions for the payment of alimony, and (2) whether, and to what extent if any, deductions for depreciation are allowable. Some of the facts have been stipulated. The stipulations of fact and accompanying exhibits are incorporated by this reference. Petitioner resided in Salt Lake City, Utah, *604 at the time he filed his petition. Petitioner is the father of six children. The mother of the children is Annette A. Daley. Petitioner was divorced from Mrs. Daley by a decree entered by the Fourth Judicial District Court of Wasatch County and the State of Utah on February 4, 1980. Custody of the children has always been with Mrs. Daley. The divorce decree provided that Mrs. Daley was not entitled to an award of alimony. In addition, the decree ordered that the parties' residence in Heber City, Utah, be sold and the proceeds from the sale used first to pay debts and the remainder split equally. Pending the sale of the Heber property, Mrs. Daley was awarded exclusive possession. Further, petitioner was directed to make the mortgage payments on the Heber property until the earlier of the date of sale or May 1, 1980. On October 12, 1980, petitioner and Mrs. Daley entered into an agreement before the same Fourth Judicial District Court entitled "stipulation amending child support payments." Included in the agreement was the requirement that petitioner pay Mrs. Daley $ 750 in maintenance per month for 12 years and one month. In addition, petitioner was required to make payments *605 on the Heber property. Petitioner's payments on the Heber property were to be deducted from his maintenance obligation until the property was sold. On January 14, 1981, petitioner and Mrs. Daley entered into an agreement concerning the Heber property. Pursuant to that agreement, Mrs. Daley transferred her interest in the Heber property by a quitclaim deed to petitioner. In return for Mrs. Daley's transfer of her interest in the property, petitioner assumed all liabilities associated with the Heber property. In addition, petitioner agreed to pay Mrs. Daley 45 percent of the accrued equity in the Heber property if it was sold within two years from the date of the agreement. If the property was not sold within two years, petitioner agreed to pay Mrs. Daley $ 33,000 over a period of years. On September 22, 1982, the Fourth Judicial District Court issued an amended order at the request of petitioner and Mrs. Daley. The order provided, in pertinent part, that petitioner would pay Mrs. Daley $ 500 per month child support, a sum approximately equal to the monthly payment required on the Heber property. Further, the order directed petitioner to pay Mrs. Daley $ 750 per month for a *606 period of 10 years and one month. These payments were described as the cashing out of Mrs. Daley's equity in the Heber residence and as maintenance payments for Mrs. Daley. No distinction between the cashing out and maintenance payments was provided. On October 22, 1982, petitioner and Mrs. Daley entered into an agreement of property distribution. The agreement provided that the $ 33,000 which petitioner owed to Mrs. Daley from the Heber property would be exchanged for the transfer by petitioner to her of a residence in Bountiful, Utah. Petitioner co-signed bank documents with Mrs. Daley in order to allow her to qualify as a purchaser of the Bountiful property. After title to the Bountiful property was placed in the names of both petitioner and Mrs. Daley, petitioner quitclaimed his interest in the property to Mrs. Daley. Mrs. Daley testified that after the transfer of the Bountiful property to her, petitioner assisted her in making the house payments on the property. Sometime during 1985, because of continued financial difficulties, Mrs. Daley discussed selling the Bountiful property back to petitioner. Mrs. Daley testified that the agreed sale price of the Bountiful property *607 was predicated upon petitioner's assumption of all liabilities attending the property and petitioner's promise to pay her $ 33,000 at a date in the future. On September 26, 1986, Mrs. Daley executed a quitclaim deed to petitioner for the Bountiful property. [2]
Mrs. Daley testified that she believed that petitioner had paid her approximately $ 15,000 of the $ 33,000 she was entitled to from the sale of the Bountiful property up to the date of the trial. *608 Mrs. Daley explained that the $ 15,000 figure consisted of funds provided to her periodically by petitioner for various expenses. Such expenses included school clothes for the children and car expenses of Mrs. Daley. Each payment made in this manner, she explained, was deducted from the initial $ 33,000 balance which petitioner owed to her. During 1985, sometime after the agreement to sell the Bountiful property back to petitioner, Mrs. Daley moved from the Bountiful property to a residence in Highland, Utah, which was owned by petitioner. Mrs. Daley lived rent free in the Highland property as petitioner continued to own and make all payments on the Highland property. In response to questioning by petitioner at trial, Mrs. Daley agreed that the use of the Highland residence by her and the children operated, in part, as a substitute for any interest payments which might have otherwise been due on the $ 33,000 which petitioner owed Mrs. Daley as a result of the sale of the Bountiful property. In 1989, in response to a stipulation submitted to the Fourth Judicial District Court by petitioner and Mrs. Daley, the court issued an order amending the amended order of September 22, *609 1982, nunc pro tunc. The order directed that the previous amended order be further amended to eliminate the language indicating that petitioner's payments to Mrs. Daley consisted in part of a cashing out of her equity in the parties' residence. Of all the payments and funds otherwise transferred from petitioner to Mrs. Daley, none were ever specifically designated as alimony payments. The first issue for decision is whether petitioner is entitled to any deduction for alimony for the years at issue. It is petitioner's position that he is entitled to an alimony deduction of $ 9,000 for each of the years 1986 and 1987. Respondent, however, contends that petitioner is not entitled to any alimony deduction for either year. Generally, respondent argues that the funds which petitioner transferred to or paid on behalf of Mrs. Daley represented payments on account of a division of marital assets which are not deductible. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving his entitlement to any deduction claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 78 L. Ed. 1348, 54 S. Ct. 788 (1934); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); *610 Rule 142(a). The deductibility of amounts paid under section 215 is determined by reference to section 71. [3] Specifically, a deduction for the payor under section 215 is predicated upon the inclusion of the payment at issue in the gross income of the recipient spouse pursuant to section 71. Section 71(a)(1) provides rules for the inclusion in gross income of payments received at the direction of a decree of divorce or separate maintenance. Payments to the recipient spouse will be included in such spouse's gross income if: (1) The payments are periodic, (2) the payments arise because of a marital or family relationship, (3) the payments are made pursuant to a decree of divorce or separate maintenance or to a written instrument incident thereto, and (4) the payor is under a legal *611 obligation to make the payments. Sec. 71(a)(1). Section 71(b), however, provides that payments pursuant to a qualifying instrument which are specifically directed for child support shall not be included within the gross income of the recipient. In addition, when payments of both alimony and child support are provided for and the amount paid is less than the amount specified in the applicable instrument, section 71(b) provides that the payment will be allocated to satisfy the child support component of the payment to the fullest extent possible. An obvious prerequisite to a deduction for the payment of alimony pursuant to section 215 is the existence of payments in the years at issue. During 1986 and 1987, the facts indicate that petitioner made payments to or at the request of Mrs. Daley in three different manners. First, petitioner allowed Mrs. Daley to reside in the Highland property rent free while petitioner made all payments on the Highland property. Second, petitioner made payments to Mrs. Daley or others for expenses of the children. Third, petitioner made payments to Mrs. Daley or others for personal expenses of Mrs. Daley. We conclude that petitioner is not entitled *612 to a deduction for the payment of alimony to Mrs. Daley. Specifically, petitioner is not entitled to an alimony deduction for his provision of the Highland property to Mrs. Daley on a rent-free basis. The facts show that the provision of the Highland property to Mrs. Daley may have been done in partial satisfaction of the debt petitioner owed to Mrs. Daley from her sale to petitioner of the Bountiful property. In particular, petitioner elicited testimony from Mrs. Daley which indicated that Mrs. Daley received the rent-free use of the Highland property from petitioner in lieu of any interest obligation petitioner might have had on the debt he owed Mrs. Daley from the sale of the Bountiful property. Thus, petitioner has not shown that the rent-free use of the Highland property by Mrs. Daley was not payment by him on the debt which he owed Mrs. Daley. We therefore conclude that petitioner is not entitled to an alimony deduction for the provision of the Highland property to Mrs. Daley on a rent-free basis. Alternatively, the rent-free provision of the Highland property to Mrs. Daley by petitioner fails to qualify as a payment of alimony because petitioner has not shown that it *613 does not constitute payment for child support. Petitioner's provision of the Highland property to Mrs. Daley rent free may have served to fulfill part of his child support obligation. Petitioner was obligated to make payments of $ 500 per month child support and he has not shown that he made such payments. Thus, even if we were to assume, arguendo, that the rent-free use of the Highland property was not provided to Mrs. Daley as partial payment of petitioner's debt to her, the value of the use must still be applied first to fulfill petitioner's child support obligation before it may be deducted by petitioner as alimony. Sec. 71(b). Since petitioner has not proved the value of such rent-free use or the amount of child support which he otherwise provided, we conclude that petitioner is not entitled to an alimony deduction for his provision of the Highland property to Mrs. Daley. Petitioner's payments to Mrs. Daley and to others for expenses of Mrs. Daley and the children fail to qualify as payments of alimony for similar reasons. Petitioner has not proved the amount of the payments which he made for child support. We are unable to determine whether the total of all his payments *614 sufficed to satisfy his child support obligation. See Smith v. Commissioner, 51 T.C. 1 (1968); Blyth v. Commissioner, 21 T.C. 275 (1953). In addition, the total amount of payments which petitioner made for the expenses of Mrs. Daley or the children for either year as a whole, or for any given month in either year, has not been established. We, therefore, conclude that petitioner has failed to show that he made the required child support payments, and we cannot allow petitioner an alimony deduction for any of the expenses which he incurred. The next issue for decision is whether petitioner is entitled to the depreciation deductions which he claimed on the Bountiful property for 1986 and 1987. Petitioner contends that he is entitled to depreciation deductions for the Bountiful property utilizing a basis which includes the amount of liability which he assumed on the property and a debt which he incurred to Mrs. Daley. In addition, petitioner asserts that he is entitled to depreciate the Bountiful property over a recovery period of 15 years. Respondent concedes that petitioner is entitled to depreciate the Bountiful property utilizing a basis *615 equal to the underlying mortgage liability he assumed on the property. Respondent argues, however, that petitioner is not entitled to any further basis for depreciation in excess of this amount. Respondent also contends that the property should be depreciated over a period of 19 years instead of the 15 years requested by petitioner. Section 167(a) generally allows "as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear * * * of property used in * * * [a] trade or business, or * * * property held for the production of income." That section goes on to provide that "In the case of recovery property (within the meaning of section 168), the deduction allowable under section 168 shall be deemed to constitute the reasonable allowance provided by this section." The basis for purposes of computing the allowable deduction for depreciation is the unadjusted basis. Secs. 167(g), 168(b) and 168(d)(1). Section 1012 states that "The basis of property shall be the cost of such property." The cost of property for purposes of a taxpayer's basis for computing depreciation includes valid liabilities incurred in acquiring the property. Waddell v. Commissioner, 86 T.C. 848, 898 (1986), *616 affd. 841 F.2d 264 (9th Cir. 1988). We conclude that petitioner has not demonstrated that his cost of the Bountiful property exceeded that allowed by respondent. We are not satisfied that petitioner incurred a valid liability to Mrs. Daley as part of his purchase from her of the Bountiful property. While petitioner and Mrs. Daley testified that a debt from petitioner to Mrs. Daley on the sale of the Bountiful property was initially orally agreed to, and later memorialized in a writing, we conclude that no valid liability existed at the time of the purchase to provide petitioner with a basis in excess of that already allowed by respondent. No evidence contemporaneous to the sale other than the testimony of petitioner and Mrs. Daley was presented to support petitioner's claim that he incurred an obligation to Mrs. Daley as part of the sale. The only documentation supporting petitioner's claim is a real estate contract executed by petitioner and Mrs. Daley on June 29, 1989, which states that it is intended to formalize an oral agreement entered into between petitioner and Mrs. Daley on September 30, 1985. While the facts show that petitioner owed a debt to Mrs. *617 Daley, we do not agree that petitioner has demonstrated that the debt was incurred as part of his purchase of the Bountiful property from Mrs. Daley. Instead, the debt appears to have been petitioner's unfulfilled obligation to Mrs. Daley which originated in the property settlement between petitioner and Mrs. Daley. We will not allow this debt to be included as part of petitioner's cost basis in the Bountiful property. Accordingly, we sustain respondent's determination of petitioner's basis for depreciation of the Bountiful property. We now must decide which is the appropriate recovery period for petitioner to depreciate the Bountiful property. Prior to 1981, section 167 allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of real property used in a trade or business or held for the production of income based upon the property's estimated useful life. However, as applicable here, section 168, entitled "Accelerated Cost Recovery System" (ACRS), controls the amount deductible as depreciation for such property placed in service after December 31, 1980. Generally, the ACRS method allows recovery of the cost of eligible property through tables *618 which reflect accelerated methods of depreciation over predetermined recovery periods. The recovery period for real property placed in service after May 8, 1985, and before January 1, 1987, was 19 years. The time when property is first placed in service is when it "is first placed in service by the taxpayer, not the first time the property is placed in service." Sec. 1.167(a)-11(e)(1), Income Tax Regs. The term "placed in service" is defined as when the property is "first placed in a condition or state of readiness and availability for a specifically assigned function." Sec. 1.167(a)-11(e)(1). We reject petitioner's claim that he placed the Bountiful property in service prior to May 9, 1985. The facts merely show that sometime in 1985 petitioner and Mrs. Daley agreed to a sale of the Bountiful property. The first concrete evidence of petitioner's purchase is a quitclaim deed to petitioner from Mrs. Daley on September 26, 1986. In addition, the aforementioned real estate contract submitted by petitioner, which purported to formalize petitioner's oral agreement with Mrs. Daley, states that the agreement between petitioner and Mrs. Daley was entered into as of October 1, 1985. *619 Accordingly, we sustain respondent's determination that petitioner placed the Bountiful property in service after May 8, 1985, and before January 1, 1987, so that a 19-year recovery period is applicable to petitioner's depreciation of the Bountiful property. To reflect our conclusions regarding the disputed issues and the concessions made by petitioner, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner submitted into evidence a uniform real estate contract between himself and Mrs. Daley for the sale of the Bountiful property which was signed and dated June 29, 1989. The terms of the contract called for petitioner to assume the balance of the mortgage on the property and for petitioner to execute a note to Mrs. Daley in the amount of $ 32,350.54 due and payable without interest on November 1, 1993. Included in the contract was the provision that the contract was intended to formalize the aforementioned verbal agreement of sale of the Bountiful property.↩
3. Sec. 71, as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, applies to divorce and separation instruments executed after December 31, 1984. We note that the instrument here was executed prior to that date.↩