982 F.2d 528
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 David M. DALEY, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 92-9001.
 United States Court of Appeals, Tenth Circuit.
 Dec. 8, 1992.
 
 1
 Before BALDOCK and SETH, Circuit Judges, and BABCOCK,* District Judge.**
 
 
 2
 ORDER AND JUDGMENT***
 
 
 3
 LEWIS T. BABCOCK, District Judge, Sitting by Designation.
 
 
 4
 Petitioner-appellant David M. Daley appeals from an adverse memorandum opinion of the Tax Court determining that he was not entitled to any deductions for alimony under 26 U.S.C. § 215 (1982) and that he was not entitled to include a debt to his ex-spouse Annette Daley in the basis of property for purposes of determining the depreciation deduction under 26 U.S.C. §§ 167 and 168 (1982). See Daley v. Commissioner, 62 T.C.M. (CCH) 1197 (1991). We affirm.
 
 
 5
 David and Annette Daley were divorced on February 4, 1980. The divorce decree ordered that their residence in Heber City, Utah, be sold and the proceeds be split equally after payment of debts. Pending sale, Annette was given possession of the residence. The divorce decree also awarded Annette custody of the children and child support of $300.00 per month. The decree expressly stated that Annette would not receive alimony. Support and alimony, however, were to be reviewed by the state court on the earlier of approximately one year or the sale of the residence.
 
 
 6
 Subsequently, on October 12, 1980, David and Annette entered into a stipulation amending the child support. David was to pay Annette $750.00 per month for maintenance for twelve years in lieu of child support. Also, he was to pay the mortgage payment on the parties' jointly owned house and deduct the mortgage payment from the $750.00 per month maintenance amount until the house was sold.
 
 
 7
 On January 14, 1981, Annette transferred to David, by quitclaim deed, her interest in the Heber City residence. Pursuant to their agreement, David assumed all future responsibility for mortgage, tax, and interest payments on the property. If the property was not sold within two years, David was to pay Annette $33,000.00 over twelve years. If Annette could not find a satisfactory residence she had the option to rent the Heber City residence for $400.00 per month for one year.
 
 
 8
 On September 22, 1982, the state divorce court entered an amended order, providing that David would pay the $500.00 mortgage on the Heber City residence as child support and that he would claim the minor children as exemptions on his tax return. Also, David was to pay $750.00 per month for ten years and one month, with this amount representing the "cashing out of [Annette's] equity in the parties' residence and as maintenance for [Annette]."
 
 
 9
 In October, 1982, Suzanne Rowser, who owned a residence in Bountiful, Utah, traded her residence for the Heber City residence. At the same time, the Daleys entered into an agreement in which Annette agreed to accept the $33,000.00 equity in the Bountiful residence as her share of the equity in the Heber City residence. David transferred his interest in the Bountiful residence to Annette by quitclaim deed. David, however, made the mortgage payments on the Bountiful residence.
 
 
 10
 On September 26, 1986, Annette quitclaimed her interest in the Bountiful residence to David. The parties orally agreed that he was to assume all liabilities and pay $33,000.00 to Annette in the future. Annette and the children then moved into David's residence in Highland, Utah.
 
 
 11
 On his 1986 and 1987 tax returns, David deducted $7,200.00 as alimony. Annette reported alimony income of $7,200.00 for the same years. David also took depreciation deductions for those years on the Bountiful residence, including his debt to Annette as part of the basis of the property.
 
 
 12
 The Internal Revenue Service (IRS) audited David's 1986 and 1987 tax returns. During the audit, on December 10, 1988, David and Annette prepared a written agreement to support their oral agreement that Annette sold the Bountiful residence to David, who assumed all obligations on the property and allowed Annette and the children to use the Highland residence. Pursuant to the written agreement, David would pay Annette $32,350.54 on the earlier of November 1, 1993, or upon sale of the house.
 
 
 13
 In March 1989, the Utah state court entered an order nunc pro tunc amending the September 22, 1989, order. This order stated the $750.00 monthly payment to Annette was maintenance. The nunc pro tunc order eliminated the language indicating that the $750.00 payment represented the cashing out of Annette's equity in their residence and maintenance.
 
 
 14
 On August 23, 1990, the IRS sent David a notice of deficiency for 1986 and 1987. The IRS refused to allow a deduction for alimony payments and decreased the depreciation deduction by disallowing the debt representing Annette's equity in the Bountiful residence as part of David's basis in the residence.
 
 
 15
 David filed a petition with the Tax Court seeking a redetermination of the deficiency. The Tax Court concluded David was not entitled to the deduction for alimony. The court determined that David made payments in three different ways: (1) allowing Annette and the children to reside in the Highland residence rent-free while he made all payments; (2) paying expenses of the children; and (3) paying expenses to Annette or others for her. Daley, 62 T.C.M. (CCH) at 1199-1200. The court concluded these payments were not proved to be alimony, however. The court decided no alimony deduction was available for the payments related to the Highland residence because David did not show that the rent-free use of the Highland residence was not a payment by him on the debt he owed Annette. Id. at 1200. Alternatively, the Tax Court stated that David failed to prove the rent-free provision of the Highland residence did not constitute child support. Id. Likewise, the Tax Court concluded the payments to Annette and others for Annette and the children were not proven to be alimony. Id. The court also refused to allow David to include in the basis of the Bountiful residence the amount he promised to pay Annette for her equity in the property. Id. at 1200-01. David appealed.
 
 
 16
 This court will not set aside findings of the Tax Court unless those findings are clearly erroneous. Yates v. Commissioner, 924 F.2d 967, 969 (10th Cir.1991). Conclusions of law and conclusions of ultimate fact obtained from applying legal principles to the facts are subject to de novo review. Id.
 
 I.
 
 17
 David first argues that he is entitled to alimony deductions for 1986 and 1987. He maintains that it was the intent of himself and Annette that the payments be alimony. Additionally, he points to the state court's determination as proof that they intended the payments to be alimony.
 
 
 18
 The payor may take a deduction for alimony pursuant to 26 U.S.C. § 215 (1982), if the alimony is included in the income of the recipient pursuant to 26 U.S.C. § 71 (1982). Section § 71(a) provides that when, among other things, payments are periodic and arise out of a support obligation, the payments are income to the recipient. Gammill v. Commissioner, 710 F.2d 607, 609 (10th Cir.1982). Payments which are for child support are not included in the gross income of the recipient. 26 U.S.C. § 71(b) (1982). When both alimony and child support are to be paid and the amount actually paid is less than the amount specified in the agreement, child support obligations are satisfied first. Id.
 
 
 19
 To determine whether a payment is alimony, the court must look at the facts and circumstances to determine the intent of the parties. Gammill, 710 F.2d at 609. "[T]he incidence of taxation depends on the substance of a transaction, and the government may look at the realities of a transaction to determine its tax consequences, despite the form." Riley v. Commissioner, 649 F.2d 768, 773 (10th Cir.1981). The characterization of the transfer by the state court is not controlling for tax purposes. Id. at 773-74.
 
 
 20
 Recognizing the state court's determination as to the payments is not binding, David argues the state court's determination is persuasive. According to David, the state court's original decree of divorce did not reflect the Daleys' intent that David pay Annette maintenance. The state court, upon the Daleys' request, therefore revised the order nunc pro tunc.
 
 
 21
 The Tax Court looks at nunc pro tunc orders to determine whether the order altered the legal status of the parties or corrected errors the state court had made in formulating the original decree. Segal v. Commissioner, 36 T.C. 148, 152-53 (1961). When local court error is clearly established, the Tax Court gives effect to the nunc pro tunc judgment entry. Newman v. Commissioner, 68 T.C. 494, 503 (1977). When there is no showing the original decree did not reflect the state court's intent at the time it was entered, the change in the amended decree was not to correct a mistake, it was to change the status of the parties. Segal, 36 T.C. at 152-53. Contrary to David's argument, there was no showing that the parties initially intended that the payments only be alimony. Thus, the nunc pro tunc order changed the status of the parties.
 
 
 22
 David argues that payments be made on behalf of Annette for her expenses were alimony, even though these payments were not in conformity with the divorce decree. Because she included these payments as income on her tax return, he believes he is entitled to an alimony deduction. The Tax Court determined that David never proved these payments were not child support. Daley, 62 T.C.M. (CCH) at 1200. The Tax Court's determination is supported by the evidence before it. Cf. Grutman v. Commissioner, 80 T.C. 464, 471 (1983) (generally when husband makes mortgage payments on house wife does not own but where she lives, it is not alimony).
 
 
 23
 We conclude, for substantially the reasons set forth by the Tax Court, that the Tax Court correctly determined that David is not entitled to a deduction for alimony.[1]
 
 II.
 
 24
 David argues that he is entitled to a basis in the Bountiful property that includes his $33,000.00 debt to Annette. He believes that this full basis should be the basis for depreciation deductions.
 
 
 25
 A depreciation deduction for wear and tear is permitted for property held for the production of income. 26 U.S.C. § 167(a) (1982). The basis for purposes of determining the depreciation deduction is the adjusted basis. Id. § 167(g). The basis of property is the cost of the property. Id. § 1012. Generally, the cost includes liabilities incurred to acquire the property. See Crane v. Commissioner, 331 U.S. 1, 11 (1947). When, however, the liabilities are contingent, they are not included in the cost basis. Estate of Baron v. Commissioner, 798 F.2d 65, 68-70 (2d Cir.1986); Waddell v. Commissioner, 86 T.C. 848, 904 (1986), aff'd, 841 F.2d 264 (9th Cir.1988). Debt will be included in basis only if the debt is likely to be paid. Waddell, 86 T.C. at 902.
 
 
 26
 David contends that because the sale of the Bountiful property was initially agreed to orally and later memorialized in writing there was an actual debt. We agree with the Tax Court's conclusion that no valid liability existed at the time of purchase such that David assumed a valid liability giving him additional basis. As the Tax Court determined, the liability appeared to be part of David's obligation to Annette under their property settlement. Daley, 62 T.C.M. (CCH) at 1200-01.
 
 
 27
 David argues that he fulfilled the property settlement obligation in October 1982 when Annette purchased the Bountiful residence. Annette could not make payments on the residence, so he assumed the payments and agreed to pay her for her equity in the Bountiful residence. He maintains that this did not reinstate the property settlement obligation and instead was a liability he assumed in acquiring the property.
 
 
 28
 We disagree with these arguments. The Daleys entered into several agreements with regard to their property settlement. The Bountiful liability appeared to be, as the Tax Court determined, a further part of their property settlement. David's self-serving assertions must be balanced against these circumstances. See Riley, 649 F.2d at 773.
 
 
 29
 The judgment of the United States Tax Court is AFFIRMED.
 
 
 
 *
 Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 ***
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 David also argues that the Tax Court erred because it failed to consider five objective factors to determine whether the payments were alimony. The five factors are (1) whether the payment is a fixed sum; (2) whether the payments are related to the obligor's income; (3) whether the payments continue regardless of the obligee's death or remarriage; (4) whether the obligee gave consideration for the payments; and (5) whether the obligor put up security to insure payment. Gammill, 710 F.2d at 610. These five objective factors concern whether a payment is part of a property settlement or is alimony. Even if the Tax Court should have considered these five factors, the court did not err in determining David was not entitled to an alimony deduction